SINGER, J.
{¶ 1} Appellant, Mickey Spaulding, appeals his conviction and sentence from the May 27, 2016 judgment of the Sandusky County Court of Common Pleas, in which he was found guilty of felonious assault and tampering with evidence and was sentenced to a mandatory prison term. For the reasons that follow, we affirm.
Assignments of Error
{¶ 2} Appellant sets forth the following assignments of error:
1. The defendant was prevented from having a fair trial when the court failed to allow the defense to cross examine the victim on other injuries that caused serious physical harm and information on a tape of the victim's statements that were only given to the defense on the day of the trial, that went to provocation[.]
2. The court erred in allowing lesser included charges in the jury instructions.
3. The court erred in not sustaining defense counsel's motion to dismiss the tampering with evidence charge.
4. The court erred in awarding mandatory time when it was not indicated in the indictment.
Facts
{¶ 3} Late in the evening of October 29, 2015, and into the early morning hours of October 30, 2015, appellant was at a bar called Arrow Café in Clyde, Ohio. James Pollard, the victim, and some of Pollard's work friends were also at the bar celebrating a co-worker's birthday. At about 1:00 a.m. to 1:30 a.m., appellant was talking to one of the female members of Pollard's group, when Pollard's friend, Brandon Ruhlen, believed the woman was uncomfortable with appellant's attention. Ruhlen told appellant it was time for appellant to leave the bar. Words were exchanged. After appellant left the bar, Pollard and Ruhlen also left the bar so that Pollard could smoke a cigarette outside. As appellant headed toward his car in the parking lot, Ruhlen shouted "bye-bye bitch" at appellant. Appellant then grabbed a hammer from the trunk of his car, approached Pollard and struck Pollard on the head with the hammer, rendering Pollard unconscious ("the incident"). Appellant returned to his car with the hammer and started to drive off.
{¶ 4} Meanwhile, an on-duty police officer, who was parked in a nearby parking lot, witnessed the incident. The officer instructed appellant to stop as appellant drove past, but appellant continued to drive away. The officer rendered aid to Pollard, who lay bleeding on the ground. Medical help arrived and Pollard was taken to a hospital via ambulance. Shortly *1061 thereafter, appellant was apprehended by police. Although appellant did not have the hammer when he was stopped, the hammer was recovered by police along the route that appellant had driven, about one block away from the bar.
{¶ 5} Appellant was indicted for attempted murder, in violation of R.C. 2903.02(A) and 2923.02, and tampering with evidence, in violation of R.C. 2921.12. The indictment did not mention appellant's previous attempted aggravated murder conviction.
{¶ 6} The matter proceeded to a jury trial. On the first day of trial, during Pollard's cross-examination by appellant, Pollard was asked if he had talked to police after the incident. Pollard indicated he did speak with police, and it was discovered that there was a recorded statement of Pollard's interview with police ("the recording"). The trial adjourned for the day so the state could locate the recording. A copy of the recording was located and provided to appellant, who was able to listen to Pollard's interview.
{¶ 7} The next day at trial, during Pollard's continued cross-examination, appellant asked Pollard if he had listened to the recording; Pollard had not. Pollard was given the opportunity to listen to the recording, outside of the presence of the jury, to refresh his recollection. Thereafter, Pollard's cross-examination resumed, but Pollard could still not remember the events on the recording. Appellant sought to play the recording for the jury to impeach Pollard. Instead of playing the recording for the jury, the court allowed appellant to cross-examine Pollard regarding certain statements on the recording. Appellant cross-examined Pollard about statements that Pollard was a boxer, and attempted to cross-examine Pollard about statements concerning a fight Pollard was in years ago which resulted in Pollard being seriously injured and going to the hospital. The state objected; the court sustained the objection.
{¶ 8} At the conclusion of the state's case in chief, appellant moved for acquittal under Crim.R. 29 on the tampering with evidence charge; the motion was denied. The case went to the jury. The jury found appellant not guilty of attempted murder but guilty of felonious assault, under R.C. 2903.11(A)(1), and tampering with the evidence. Appellant was sentenced to eight years of mandatory prison time for the felonious assault conviction and 36 months for the tampering with the evidence conviction, to run concurrently. Appellant timely appealed.
Legal Analysis
1. Extrinsic Evidence
{¶ 9} In the first assignment of error, appellant argues the trial court prevented him from having a fair trial by not allowing him to play the recording for the jury or cross-examine Pollard regarding injuries Pollard had previously sustained. Appellant sought to introduce the portion of the recording where Pollard made statements about previously being a boxer, the serious injuries Pollard sustained when he was attacked by a group of men approximately eleven years before the incident, and events which occurred in the bar before the incident. Appellant wanted to show that Pollard's injuries were caused by a previous injury and not by appellant's actions. Appellant also wanted to use the recording to prove Pollard was not telling the truth on the stand about the events which occurred at the bar before the incident, and that Pollard's acts provoked the incident.
{¶ 10} The state countered Pollard's prior injuries had no effect on the injuries he suffered as a result of the incident. In addition, the state maintained the recording *1062 was rightfully excluded as appellant not only intended to impeach Pollard, but also sought to bring in evidence that appellant was provoked.
a) Serious Physical Harm
{¶ 11} Under R.C. 2901.01(A)(5), serious physical harm is defined as:
(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
* * *
(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity.
{¶ 12} In order for a defendant to be convicted of felonious assault under R.C. 2903.11(A)(1), the state must prove, among other elements, that the victim suffered "serious physical harm."
{¶ 13} In State v. Sykes , 6th Dist. Lucas No. L-16-1166, 2017-Ohio-1228, 2017 WL 1193835, ¶ 22, we found when injuries were serious enough to cause the victim to seek medical treatment it was reasonable to infer that serious physical harm had occurred. In State v. Sales , 9th Dist. Summit No. 25036, 2011-Ohio-2505, 2011 WL 2041114, ¶ 19, the court held that being rendered unconscious, no matter how brief, qualified as a "temporary substantial incapacity," which satisfied the serious physical harm requirement. In another case, the appellate court determined significant bleeding suggested serious physical harm had occurred. State v. Redman , 3d Dist. Allen No. 1-15-54, 2016-Ohio-860, 2016 WL 859926, ¶ 25-26.
b) Provocation
{¶ 14} Provocation is a factor which mitigates the crime such that the provoked offender is less worthy of blame and subject to less punishment. State v. Roberts , 8th Dist. Cuyahoga No. 90998, 2009-Ohio-1605, 2009 WL 867616, ¶ 19. The provocation must be serious, caused by the victim and "reasonably sufficient to incite the person into using deadly force." R.C. 2903.12(A). "[W]ords alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations." State v. Mack , 82 Ohio St.3d 198, 201, 694 N.E.2d 1328 (1998), citing State v. Shane , 63 Ohio St.3d 630, 590 N.E.2d 272 (1992), paragraph two of the syllabus. Similarly, "past incidents or verbal threats do not satisfy the test for reasonably sufficient provocation when there is sufficient time for cooling off." Mack at 201, 694 N.E.2d 1328, citing State v. Huertas , 51 Ohio St.3d 22, 31-32, 553 N.E.2d 1058 (1990).
c) Recorded Statement
{¶ 15} Evid.R. 613(B), which addresses extrinsic evidence of prior inconsistent statement of witness, provides:
Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply;
(1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interest of justice otherwise require;
(2) The subject matter of the statement is one of the following:
(a) A fact that is of consequence to the determination of the action other than the credibility.
(b) A fact that may be shown by extrinsic evidence under Evid.R. 608(A) [opinion and reputation evidence of character], 609 [conviction of a crime], 616(A) [bias] or 616(B) [sensory or mental defect];
*1063 (c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence.
{¶ 16} If a witness admits making a conflicting statement, there is no need for extrinsic evidence. (Citations omitted.) State v. Adams , 9th Dist. Lorain No. 15CA010868, 2017-Ohio-1178, 2017 WL 1227037, ¶ 18. If a witness denies making the statement, extrinsic evidence may be admitted, in accordance with Evid.R. 613(B). If a witness claims he cannot remember a prior statement, "[o]rdinarily, a lack of recollection is treated the same as a denial, and use of extrinsic impeachment evidence is then permitted." State v. Hall , 2d Dist. Montgomery No. 13805, 1994 WL 409639, *9 (Aug. 3, 1994).
{¶ 17} The admission of evidence is left to the discretion of the trial court and will only be overturned upon a showing of an abuse of discretion which creates material prejudice. State v. Patton , 6th Dist. Lucas No. L-12-1356, 2015-Ohio-1866, 2015 WL 2329173, ¶ 53. "Abuse of discretion" has been defined as an attitude which is unreasonable, arbitrary, or unconscionable. Huffman v. Hair Surgeon, Inc. , 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985).
{¶ 18} Here, the recording and a transcript of the recording are included in the record. A review of the transcript reveals Pollard, who was not under oath, tells a police officer what he remembered about the night of the incident, as well as other information. Some of the statements are in opposition to Pollard's testimony in court where he claimed he could not recall anything.
{¶ 19} Regarding the issue of provocation, a review of the record shows at trial, Pollard stated he did not remember talking to or saying anything to appellant before the incident. On the recording, Pollard said he never said anything to appellant or had any physical contact with appellant prior to the incident. Since a lack of recollection is treated as a denial, Pollard's statements are not inconsistent. Thus, the statement in the recording was not admissible under Evid.R. 613(B).
{¶ 20} As to Pollard being a boxer, at trial, Pollard was asked about being a boxer and acknowledged as much. On the recording, Pollard talked about being a boxer. As these statements are not inconsistent, Pollard's statement on the recording fails to qualify as impeachment evidence, and Evid.R. 613(B) does not apply.
{¶ 21} With respect to injuries Pollard suffered eleven years earlier when he was jumped by a group of men, Pollard discussed, in depth, on the recording his severe injuries including a fractured skull and shattered teeth. Pollard admitted he was still undergoing dental work as a result of that attack.
{¶ 22} At trial, Pollard testified as a result of the incident, he had a fractured skull and perhaps a concussion, and he thought he was in the hospital for three or four days. Pollard testified he was off of work for over a month, then was on light duty for a week or two before he went back to his usual work. At the time of trial, Pollard was still experiencing memory issues and had bad headaches. Appellant then questioned Pollard if prior to the incident he had problems with headaches or memory and Pollard answered, "Yes, from when I-," but the court sustained the state's objections to the question. Since it appears that Pollard was going to acknowledge his previous injuries, the statements would not be inconsistent and Evid.R. 613(B) would not apply. Nonetheless, the court erred in not allowing Pollard to fully answer appellant's question regarding prior memory or headache issues, as the query dealt with issues relevant *1064 to Pollard's current problems, and whether the problems were caused by appellant or due to his previous injuries. See Evid.R. 402 ; State v. Spivey , 3d Dist. Marion No. 9-12-27, 2013-Ohio-851, 2013 WL 937754, ¶ 88-89. The error, however, is harmless as there was ample evidence in the record that Pollard suffered serious physical harm as a result of the incident.
{¶ 23} Included in the record is photographic evidence showing a pool of blood roughly three feet wide on the ground where Pollard lay after he was struck on the head by the hammer wielded by appellant. In addition, there was testimony by several witnesses that Pollard was rendered unconscious by the strike to the head, was bleeding and was taken by ambulance to the hospital for medical treatment. A police officer testified he had to drive the ambulance to the hospital because both paramedics were needed to treat Pollard. Pollard also testified to the problems he has endured since the incident. Thus regardless of any previous injuries Pollard had suffered, substantial evidence existed to support the finding that Pollard suffered serious physical harm as a result of the hammer attack by appellant. Accordingly, appellant's first assignment of error is not well-taken.
2. Lesser Included Charge
{¶ 24} In the second assignment of error, appellant argues the court erred in allowing lesser included charges into the jury instructions. The state contends the jury was properly instructed as the desire to cause serious physical harm is included in the desire to kill.
{¶ 25} Upon review, the record shows the trial court included in the jury instructions charges for attempted murder, felonious assault and aggravated assault.
{¶ 26} A two-step analysis must be conducted in order to determine when a lesser included offense can be considered: "(1) is the offense a lesser included offense of the charged offense, and (2) could the trier of fact reasonably find the defendant not guilty of the charged offense, but convict the defendant of the lesser included offense." State v. Deanda , 136 Ohio St.3d 18, 2013-Ohio-1722, 989 N.E.2d 986, ¶ 6.
{¶ 27} It has been established that felonious assault with a deadly weapon is not a lesser included crime in attempted murder. State v. Barnes , 94 Ohio St.3d 21, 26, 759 N.E.2d 1240 (2002). However, the commission of felonious assault by causing serious physical harm has been held to be a lesser included offense of attempted murder, as "[c]learly, the offense of murder necessarily includes the commission of felonious assault through causing serious physical harm, because purposely causing death necessarily involves knowingly causing serious physical harm." Deanda at ¶ 19.
{¶ 28} R.C. 2903.11(A)(1), felonious assault, provides: "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *." The crime which forms the foundation of the greater offense is murder, a first-degree felony, in violation of R.C. 2903.02(A), which states: "[n]o person shall purposely cause the death of another * * *." And, Ohio's attempt statute provides "[n]o person, purposely or knowingly, * * * shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(A).
{¶ 29} Here, the jury could reasonably find appellant not guilty of attempted murder, but guilty of felonious assault, as the evidence shows appellant approached Pollard and struck him on the head with a hammer one time. Had appellant struck Pollard on the head numerous times with the hammer it may have been unreasonable for the jury to believe appellant did not attempt to kill Pollard. Thus, the jury could reasonably believe that appellant *1065 knowingly caused serious physical harm to Pollard, but did not attempt to cause Pollard's death. As the Deanda analysis has been satisfied, felonious assault was a lesser included offense of attempted murder. Accordingly, the trial court did not err in instructing the jury on the lesser included offense of felonious assault. Appellant's second assignment of error is not well-taken.
3. Motion for Acquittal
{¶ 30} Appellant argues in his third assignment of error that the trial court incorrectly denied his Crim.R. 29 motion for acquittal on the tampering with evidence charge. The state counters there was sufficient evidence to sustain a conviction for that charge.
{¶ 31} When reviewing a trial court's denial of a motion for acquittal, the appellate court, after examining the evidence in the light most favorable to the prosecution, must determine whether any reasonable mind could have found all elements of the crime proven beyond a reasonable doubt. State v. Flores , 6th Dist. Wood Nos. WD-04-012, WD-04-050, 2005-Ohio-3355, 2005 WL 1532650, ¶ 33.
{¶ 32} R.C. 2921.12(A)(1) prohibits tampering with the evidence stating, "[n]o person, knowing that an * * * investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any * * * thing, with purpose to impair its value or availability as evidence in such * * * investigation."
{¶ 33} Here, the evidence shows after appellant hit Pollard on the head with a hammer, appellant left the scene of the incident with the hammer and drove past a police officer, in a marked police car. The officer commanded appellant to stop, but appellant continued to drive off. Shortly thereafter, appellant was stopped by the police and the hammer was located on the side of the road along the path appellant had just travelled. Appellant admitted that the hammer was his. From this evidence, it is reasonable to assume appellant knew an investigation was underway or likely to happen at that point in time. It is also reasonable to assume appellant removed the hammer from his car with the purpose of impairing its value or availability as evidence in the investigation.
{¶ 34} Viewing the evidence in light most favorable to the prosecution, reasonable minds could in fact find all elements of the offense were met. Therefore, the trial court correctly denied the Crim.R. 29 motion for acquittal on the tampering with evidence charge. Appellant's third assignment of error is not well-taken.
4. Mandatory Time
{¶ 35} Appellant contends, in his final assignment of error, that the court erred in sentencing him to mandatory time when it was not indicated in the indictment. The state counters under Crim.R. 7(B), the indictment was sufficient as it must "give the accused notice of all the elements of the offense with which he is charged."
{¶ 36} Crim.R. 7(B) states in pertinent part that "[t]he indictment shall * * * be made in ordinary and concise language without technical averments or allegations not essential to be proved."
{¶ 37} Where the existence of a prior conviction enhances the penalty for a subsequent offense, but does not elevate the degree, the prior conviction is not an essential element of the subsequent offense, and does not need to be alleged in the indictment. State v. Allen , 29 Ohio St.3d 53, 506 N.E.2d 199 (1987), syllabus; State v. Clark , 2d Dist. Montgomery No. 21410, 2006-Ohio-6068, 2006 WL 3344999, ¶ 11.
*1066 {¶ 38} Here, appellant was convicted of felonious assault, under R.C. 2903.11(A)(1), which is a second-degree felony. R.C. 2903.11(D)(1)(a). R.C. 2903.11 generally does not provide for a mandatory sentence, although there is one exception: if the victim is a peace officer and suffers serious physical harm, the offense is a first-degree felony and a mandatory prison term is required. R.C. 2903.11(D)(1)(a) and (b). Since appellant did not assault a peace officer, R.C. 2903.11(D) is inapplicable.
{¶ 39} Under criminal sentencing statute R.C. 2929.13(F), circumstances are also set forth in which the trial court shall impose a mandatory prison term. These circumstances include convictions for offenses such as murder, rape and sexual offenses, R.C. 2929.13 (F)(1), (2) and (3), and convictions under statutes which require the imposition of a mandatory term, R.C. 2929.13(F)(4). In addition, R.C. 2929.13(F)(6) provides for the imposition of a mandatory prison term upon a conviction for a first or second-degree felony, which is not otherwise set forth in R.C. 2929.13(F), if the offender previously was convicted of or pled guilty to a first or second-degree felony.
{¶ 40} Here, R.C. 2929.13(F)(1), (2), (3) and (4) did not apply to appellant. Revised Code 2929.13 (F)(6) did apply to appellant because he had previously been convicted of attempted aggravated murder, a first-degree felony. Appellant therefore received a mandatory prison sentence, pursuant to R.C. 2929.13(F)(6). Since appellant's prior conviction only enhanced the penalty and not the degree of the felonious assault conviction, the prior conviction was not an essential element of that offense, and did not need to be alleged in the indictment. Accordingly, appellant's final assignment of error is not well-taken.
Conclusion
{¶ 41} The judgment of the Sandusky County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.
Judgment affirmed.
James D. Jensen, P.J.
Christine E. Mayle, J.
CONCUR.